[No. 28612. Department Two. March 28, 1942.]

C. T. HARDINGER et al., Appellants, v. EDWARD BLACK-MON et al., Respondents.[1]

¹Reported in 124 P. (2d) 220.

*C. T. Hardinger,* for appellants.

*Arthur C. Bannon,* for respondents.

BEALS, J.—Plaintiffs, C. T. Hardinger and Margaret Hardinger, husband and wife, being the owners of lot 10, block 2, Pratt's addition to the city of Seattle, during the spring of 1940 listed the property with Columbia Realty Company, for sale at two thousand dollars, on terms, or for rent at twenty-five dollars per month. June 24, 1940, through the office of the agency above

named, a written lease was executed, whereby plaintiffs leased the property to defendants, Edward and Faye Blackmon, husband and wife, for the term of ten months, from July 1, 1940, at thirty dollars per month, payable monthly in advance, the lease providing that the defendants should have the option to purchase the property for $1,800, on or before the expiration of the term of the lease, $250 cash, the balance of the purchase price to be paid at the rate of twenty dollars per month, including interest on deferred payments, at the rate of six per cent per annum. The lease further provided that, if defendants should elect to purchase the property under their option, one-half of the amounts which they had theretofore paid as rent should be credited upon the purchase price of the property.

Defendants entered into possession of the demised premises, and regularly paid the stipulated rent, up to and including the month of March, 1941.

The lease contained the following provision:

"It is agreed by both the lessor and the lessee that the said lease shall be placed with the Columbia Realty Company for collection and that all payments shall be paid thereto."

At the time of the execution of the lease, which had been prepared by the Realty Co., following the standard lease form prepared by a well known title insurance company, plaintiff C. T. Hardinger added to the lease a rider, reading as follows:

"Whereas the Columbia Real Estate Company has negotiated a lease of the premises at No. 3540 Bennett Street with Edward Blackmon, for a period of ten months from July 1st, 1940, with an option to buy the property at or before that time on the terms set out in the written lease:

"It is therefore agreed that the Columbia Real Estate Co. will make the monthly collections of $30.00 per

month and promptly remit $27.50 thereof to C. T. Hardinger, 5208 Latona Avenue:

"If the lessee exercises the option to purchase said property and pays an additional sum of $100.00 or more upon the purchase price, then the Columbia Real Estate Co. shall be entitled to retain the sum of $72.50 as and for their commission in said matter, and pay the balance of $27.50 to C. T. Hardinger, and the $97.50 so retained by them shall be in full of all commission and charges in said matter; however, should the said Edward Blackmon fail to purchase said property, then the $2.50 per month shall be in full settlement of all commissions and charges in the matter of said lease and proposed sale."

The rider was signed by plaintiffs and by C. C. Smith, on behalf of the Realty Co.

March 15, 1941, defendants notified the Realty Co. that they desired to exercise their option to purchase the property, and paid to the Realty Co., for plaintiffs, $110, it appearing that that was the sum required to make the down payment of $250, according to the option agreement allowing defendants credit on the down payment for one-half of the amount of rental which they had paid. It appears that, in addition to the first month's rental of thirty dollars, defendants had at that time paid an additional ten dollars, to be credited upon the last month's rent.

After receipt of this sum from defendants, the Realty Co. prepared a real estate contract, dated March 24, 1941, using the standard form provided by the title insurance company, which proposed contract the Realty Co. delivered to plaintiffs, the contract not having been previously executed by defendants. The proposed contract contained a provision permitting the vendees to refinance the contract at any time, and requiring the vendors (plaintiffs) to furnish vendees with a policy of title insurance.

Plaintiffs objected to the contract as prepared and presented to them by the Realty Co., and prepared another and different contract, dated back to June 24, 1940, and providing for the payment of interest on the purchase price from that date, resulting in an allowance to defendants of a credit on the down payment of only $60.99, instead of the sum of $140 which the Realty Co. and defendants had agreed was the amount of the credit to which defendants were entitled. The contract prepared by plaintiffs also omitted the provisions of the proposed contract permitting the vendees to refinance the same and requiring plaintiffs to furnish title insurance. It does not appear that the contract prepared by plaintiffs was ever submitted to defendants, but immediately upon receipt thereof, an agent of the Realty Co. wrote plaintiffs, calling their attention to the fact that defendants had fulfilled all terms and conditions of their lease, and were ready to exercise their option to purchase. The letter also called plaintiffs' attention to the fact that plaintiffs' contention that they were entitled to interest on the purchase price from June 24, 1940, was incorrect.

Nothing further was accomplished, and April 23, 1941, plaintiffs instituted this action against defendants, alleging in their complaint that defendants were unlawfully holding possession of the premises after the expiration of their lease thereof, asking double damages from defendants, and demanding a writ of restitution. It clearly appears that plaintiffs' action was instituted under the unlawful detainer statutes, plaintiffs having apparently been under the mistaken idea that defendants' lease expired April 1, 1941, instead of on May 1st following, the lease having covered the term of ten months from July 1, 1940. The complaint did not allege that any notice whatever had been served upon defendants, requiring them to quit

or pay rent, or to surrender possession, the complaint expressly alleging that defendants were "unlawfully holding possession of the above described real estate after the expiration of the foregoing written lease." A copy of the lease was attached to the complaint, showing on its face that the tenancy thereby created did not expire until the end of the month of April, 1941.

Defendants answered plaintiffs' complaint, denying the material allegations thereof, and pleading by way of an affirmative defense that no notice of any delinquency in the payment of rent, nor any notice of any character demanding possession of the premises had ever been served upon defendants. By way of a cross-complaint, defendants asked for judgment in their favor, together with a decree requiring plaintiffs to specifically perform the provisions of the agreement granting defendants an option to purchase the property. Defendants also asked for damages and costs.

The action was tried to the court as an equitable action, and resulted in findings of fact and conclusions of law in defendants' favor, followed by a decree denying, with prejudice, the prayer of plaintiffs' complaint, and directing that plaintiffs specifically perform their agreement to enter into a contract conveying the property to defendants, according to the terms of the option contained in the lease. The decree reads in part as follows:

"That they [plaintiffs] do forthwith make, execute and deliver to the defendants for their acceptance and signature a sales contract of the standard form used and distributed for use in this city by title insurance companies and dated as of March 15th, 1941, wherein and whereby they shall promise, covenant and agree to sell to the defendants Lot Ten (10) in Block Two (2) of Pratt's Addition to the City of Seattle, King County, Washington, for the principal sum of Eighteen Hundred ($1800.00) Dollars, plus interest at the rate of six (6%) per centum per annum upon unpaid bal-

ances, including therein the covenant that when such sums have been paid the plaintiffs will at once deliver to the defendants a good and merchantable title to the said property; that said contract shall also contain therein an acknowledgment by plaintiffs of a down payment to them by the defendants of Two Hundred Fifty ($250.00) Dollars on March 15th, 1941, and shall also provide for the payment of the balance of Fifteen Hundred Fifty ($1550.00) Dollars in equal monthly installments of Twenty Dollars or more which shall include interest upon unpaid balances, and which contract shall also contain an acknowledgment of the plaintiffs of the receipt of four of such payments of Twenty ($20.00) Dollars, made respectively on the 2nd of April, 1941, April 30th, 1941, May 31st, 1941, and June 23rd, 1941, in all the sum of Eighty ($80.00) Dollars paid thereon. That no provision shall be made in the said contract for the furnishing of title insurance by the plaintiffs to the defendants."

The decree further provided that, if plaintiffs failed to make, execute, and deliver the contract of sale called for by the decree within thirty days, a commissioner should be appointed to execute and deliver to defendants, on behalf of plaintiffs, the contract described in the decree.

Plaintiffs' motions to vacate the decree and to enter judgment in plaintiffs' favor, or in the alternative for a new trial, having been denied, plaintiffs appealed from the judgment, assigning many errors which may be grouped as follows:

Appellants contend that the findings of fact entered by the court are not supported by the evidence, and do not support the decree in respondents' favor; that the court erred in treating the action as equitable in its nature; and that the court was without jurisdiction to enter a decree of specific performance. Appellants also contend that the trial court erred in excluding evidence offered by appellants; in holding that respondents, by their conduct, had not lost their right to

demand performance of the option agreement contained in the lease; and in ruling that under the option agreement respondents were not required to pay interest on the purchase price from June 24, 1940, the date of the lease. Error is also assigned upon the denial of appellants' motion to vacate the decree and enter judgment in their favor; and upon the denial of their motion for a new trial.

We shall refer to appellant C. T. Hardinger as though he were the sole appellant, and to Edward Blackmon as though he were the sole respondent.

Clearly, the court did not err in dismissing appellant's complaint with prejudice. The action was commenced during the term of the lease, and was prematurely brought. In appellant's briefs we find no arguments or authorities which seriously suggest that the court committed error in dismissing appellant's action.

It is also clear that the court did not err in treating the case as one of equitable cognizance. Respondent, in the cross-complaint, asked for a decree of specific performance. Whether he was entitled to this relief or not, the action was properly triable in equity. No jury was demanded, and this assignment of error is without merit.

More serious questions are presented by appellant's arguments that the trial court erred in entering a decree in favor of respondent on the cross-complaint.

Appellant contends that the contract which was required to be made, if respondent properly exercised his option to purchase the property, should relate back to the execution of the lease, and bear the date of the lease, June 24, 1940, which would require respondent to pay interest on the purchase price from that date instead of from the date when the contract was executed after the exercise by respondent of his

option to purchase. Appellant, following his argument, sought to charge respondent interest on the purchase price from June 24, 1940, thereby reaching the mathematical result that only $60.99 of the $140 credited to respondent on the purchase price, pursuant to the provision of the lease that one-half the sums paid as rental should be credited on the purchase price of the property if the option to purchase was exercised, should be applied to the reduction of the $250 down payment, and that consequently, when respondent exercised his option and paid $110 to the Realty Co., there was due from respondent $189.01, that the payment of $110 was wholly insufficient, and that for this reason the option was not properly exercised by respondent and the option lapsed. In support of his contention that interest on the unpaid balance of the purchase price should accrue from the date of the combined lease and option, rather than from the date on which the option to purchase was exercised, several authorities are cited.

In the case of *Crowley v. Byrne,* 71 Wash. 444, 129 Pac. 113, it was held that one exercising an option to purchase land by payment of the purchase price was entitled to have his title related back to the date of the option, as against parties having notice of the option, thus terminating the rights of intervening purchasers who took conveyance with knowledge of the option. The rule laid down in the case cited is clearly correct, but does not support appellant's contention that he is entitled to interest from the date of the original contract between the parties.

The case of *Kerr v. Day,* 14 Pa. 112, 53 Am. Dec. 526, is to the same effect.

In the case of *Peoples Street R. Co. v. Spencer,* 156 Pa. 85, 27 Atl. 113, 36 Am. St. 22, a similar rule was invoked in favor of the holder of an option, who exer-

cised it some time after procuring the same, in order to secure to him the benefits of an insurance policy which he had procured, covering the property which was the subject matter of the option.

In the English case of *Lawes v. Bennett*, 29 Eng. Rep. 1111, the same principle was invoked in support of the rule of equitable conversion.

None of these cases supports appellant's contention, nor have we been able to discover any authority for the proposition that, in the absence of express agreement, the date upon which the option is given, rather than the date of the contract executed pursuant to the exercise of the option, controls the computation of interest, under circumstances similar to those here presented. Respondent, under the lease, was paying rent for the property. When he sought to exercise his option, respondent was bringing about a different relationship between himself and appellant. Before that date, he owed appellant no money (save any rent which might be due), and when the relationship should be changed from landlord and tenant to vendor and vendee, a different situation would arise, which would call for the payment of interest upon the purchase price of the property. We can find no authority whatever for the proposition that the time for the commencement of the payment of interest should be dated back to the date of the lease-option agreement.

In this connection, it should be noted that the option agreement itself contemplates a future date by stating:

"It is hereby agreed by both the lessor and the lessee that the lessee shall have the privilege of buying the above property *on or before the expiration of the lease*." (Italics ours.)

The sum of $110, paid by respondent to the Realty Co., was not a void tender because insufficient in amount, as contended by appellant.

■ Appellant strenuously contends that the payment of the $110 by respondent to the Realty Co. did not in law constitute a sufficient exercise of the option by respondent, because the Realty Co. was not appellant's agent for the purpose of receiving payments upon the contract of purchase, and had no right to receive, as appellant's agent, the initial payment of $110.

We are convinced that the Realty Co. had authority to receive, on behalf of appellant, the balance which respondent was required to make to complete the $250 down payment under the proposed contract. Appellant listed the property with the Realty Co. for rent or sale. The rentals accruing under the lease were payable to the Realty Co. Appellant, by a writing which he prepared, agreed that

"If the lessee exercises the option to purchase said property and pays an additional sum of $100.00 or more upon the purchase price, then the Columbia Real Estate Co. shall be entitled to retain the sum of $72.50 as and for their commission in said matter, and pay the balance of $27.50 to C. T. Hardinger . . ."

There can be no question but that respondent had the right to deliver to the Realty Co., as appellant's agent, the $110.

■ It is also clear that respondent's demand upon the Realty Co. for the execution of a contract of sale by appellant to respondent was in fact a sufficient demand upon appellant for the execution of such a contract. All respondent's dealings with appellant were through the Realty Co. as appellant's agent. It does not appear that appellant ever denied to the Realty Co. its right to accept from respondent the exercise of his option, or intimated that the Realty Co. lacked such authority.

■ Finally, appellant contends that respondent failed to accept the option according to its tenor, but instead offered to appellant a counter proposition, the

effect of which was to reject the option, and that, prior to the trial, the option lapsed. Appellant bases this contention upon the proposed contract of sale and purchase which was prepared by the Realty Co. and submitted to appellant after respondent had exercised his option by paying to the Realty Co. the $110 and demanding a contract.

The contract above referred to was prepared by the Realty Co. dated March 24, 1941, and contained a provision that appellant should furnish title insurance. It also granted to respondent the privilege of refinancing the contract at any time. Appellant argues that these terms contained in the contract prepared by the Realty Co. were not contemplated in the option granted to respondent by the lease, and that the submission to appellant of a proposed contract containing these provisions amounted to a rejection of the option which respondent enjoyed. The trial court found that respondent was not entitled to the inclusion of these two provisions in his contract of purchase, and no error has been assigned by respondent upon this ruling of the trial court. Assuming, then, that appellant was not obligated to execute the particular contract delivered to him by the Realty Co., we agree with the trial court in holding that the facts in connection with the preparation of this contract and its tender to appellant do not result in the loss by respondent of his right to exercise the option to purchase.

From the record it is clear that respondent simply accepted the option by paying the amount required to make the down payment of $250. The evidence shows that respondent then requested a contract which would conform with the provisions of his option.

Paragraph one of appellant's reply to respondent's counterclaim and cross-complaint reads as follows:

"Replying to paragraph III of the first affirmative defense, plaintiffs admit that the defendants on March 15, 1941, elected to purchase said property under the terms of the option, but deny that they paid any money to the agent or agents of the plaintiffs, or that they paid the balance of the 'down payment' as provided for in said instrument, or that they made any demand upon the plaintiffs whatsoever."

From the evidence it appears that the Realty Co., not respondent, prepared the proposed contract of purchase, and submitted the same to appellant. The evidence does not disclose that any of the provisions of the proposed contract were placed therein at respondent's suggestion. On cross-examination of respondent by appellant, the latter asked:

"And in the matter of performing the option you left it entirely to the Columbia Realty Company, did you not?"

to which respondent replied:

"I carried it out—I made my payments according to the way I should, according to the lease, and left everything to them, yes."

The court found that the Realty Co., upon receipt of the $110 from respondent, prepared the proposed contract upon a standard form, and forwarded the same to appellant. The court also found that, at the time of the trial, the respondent had made all payments due up to that date under the option agreement, all of these findings being supported by the evidence.

Respondent, then, when he desired to exercise his option to purchase, informed the Realty Co. of his desire, and paid to the company the amount required to make the full cash payment called for by the option, leaving it to the Realty Co. to prepare a contract in conformity with the option agreement, which should be executed by Mr. and Mrs. Hardinger. Respondent, then, exercised his option without conditions, and com-

municated this acceptance to appellant's agent. Respondent, then, became entitled to a proper contract of purchase and sale, in conformity with the above agreement contained in the lease. The record contains nothing which would support a holding that respondent at any time thereafter lost his right to receive such a contract. The trial court correctly decreed specific performance of this contract in respondent's favor.

The findings are amply supported by the evidence, the trial court committed no error in ruling upon the admissibility of testimony, and the decree appealed from is affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.

[1]Reported in 124 P. (2d) 207.