RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GEORGE HELMS, Executor of the Estate of Marie Helms,

*Plaintiff-Appellant,*

v.

GEORGE ZUBATY, individually and in his official capacity as Executive Judge, Gallatin County; WINSLOW BAKER, individually and in his official capacity as County Zoning and Planning Administrator, Gallatin County Judge Executive's Office; BRENT CALDWELL, individually and in his official capacity as Police Officer, City of Warsaw; DONNIE GOULD, individually and in his official capacity as Police Chief, City of Warsaw; TRAVIS A. SIMPSON, individually and in his official capacity as Mayor, City of Warsaw,

*Defendants-Appellees.*

No. 06-6360

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00056—William O. Bertelsman, District Judge.

Argued: June 8, 2007

Decided and Filed: July 19, 2007

Before: BATCHELDER and COLE, Circuit Judges; PHILLIPS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Shane C. Sidebottom, WOLNITZEK & ROWEKAMP, Covington, Kentucky, for Appellant. Jeffrey C. Mando, ADAMS, STEPNER, WOLTERMANN & DUSING, Covington, Kentucky, David P. Bowles, LANDRUM & SHOUSE, Louisville, Kentucky, for Appellees. **ON BRIEF:** Shane C. Sidebottom, Stephen D. Wolnitzek, WOLNITZEK & ROWEKAMP, Covington, Kentucky, for Appellant. Jeffrey C. Mando, Jennifer H. Langen, ADAMS, STEPNER,

---

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

WOLTERMANN & DUSING, Covington, Kentucky, David P. Bowles, Robert T. Watson, LANDRUM & SHOUSE, Louisville, Kentucky, for Appellees.

―――――――――――

**OPINION**

―――――――――――

ALICE M. BATCHELDER, Circuit Judge.  Plaintiff-Appellant, Marie Helms[1] ("Helms"), appeals the district court's grant of summary judgment in favor of Defendants-Appellees George Zubaty and Winslow Baker (Gallatin County, Kentucky, employees) and Brent Caldwell, Donnie Gould, and Travis Simpson (City of Warsaw, Kentucky, employees) (collectively "Defendants"), on Helms's claims arising under 42 U.S.C. § 1983 that Defendants violated her First Amendment right of free speech.  Because Helms presents no genuine issue of material fact and Defendants are entitled to judgment as a matter of law, we **AFFIRM** the district court's decision.

## I. BACKGROUND

On July 15, 2004, Helms went to the office of the Judge Executive of Gallatin County, Kentucky, Defendant-Appellee George Zubaty ("Zubaty"), to voice her concerns about the proposed county payroll tax.  When she arrived at the office suite Zubaty shares with several other county officials, Helms learned from his receptionist, Ms. Chipman ("Chipman"), that Zubaty was out of town at a conference and would not return that day.  Chipman, who has known Helms for a long time, agreed to let Helms sit down and stay in the office.  Helms launched into a criticism of the proposed tax, complaining of the hardships it would impose on everyone working in the county and calling Zubaty a "lying son of a bitch."  Chipman testified that Helms was "just kind of worked up, kind of a little bit more and more as she talked."

Defendant-Appellee Winslow Baker ("Baker"), who shares an office suite with Zubaty in his capacity as Zoning and Planning Administrator, returned from lunch several minutes later while Helms was discussing the tax with Chipman.  He testified that, as he walked through the reception area to his office, he heard Helms say that "she was going to move into that office, we were going to have to feed her and clothe her there, she wasn't going to leave."  This testimony is corroborated by Chipman's statement that Helms told her "she was just going to homestead until she got her $70 back."  Not long after his arrival at his office, Baker heard Helms call Zubaty a "son of a bitch."  He walked out into the reception area and asked Helms to leave, telling her she was disrupting the office. Baker testified that her behavior prevented him from making and returning phone calls about zoning and planning matters, and that he asked Helms to leave because her complaints "got pretty loud at times" and he thought they "could conduct business better if she would leave."

When Helms refused to leave, Baker called 911 and reported that they had "a disruptive person in the judge's office."  He then informed Helms that he had called the police.  Defendant-Appellee Officer Brent Caldwell ("Caldwell") responded to the 911 dispatch and, arriving at the office soon after Baker's call, found Helms still sitting across from Chipman.  Baker informed Caldwell that Helms had been asked to leave the office because "he was unable to conduct his course of work."

According to Caldwell, Chipman indicated that the disruption was about the payroll tax. When Caldwell asked Helms to leave, she informed him that "the attorney general told her that she had every right to be within a public building."  Officer Caldwell told Helms that she was

―――――――――――

[1]Helms died on February 14, 2007, while her appeal was pending.  Her estate proceeds in her place as of April 11, 2007.

"absolutely correct" until she was asked to leave, but Helms indicated that she would only be leaving if Caldwell put her in handcuffs. Caldwell told Helms that he would rather not arrest her, and asked her again to leave. When Helms refused, Caldwell arrested her and charged her with Criminal Trespass in the Second Degree under Kentucky Revised Statute § 511.070.

On January 4, 2005, a jury acquitted Helms of criminal trespass. On March 23, 2005, Helms filed this lawsuit claiming that the "criminal case was prosecuted against Plaintiff by Defendants in an attempt to intimidate her from speaking out against matters of public concern." The complaint names Zubaty and Baker as defendants, both individually and in their official capacities with the county. It also names Donnie Gould, City of Warsaw Police Chief, Travis Simpson, Mayor of Warsaw, and Officer Brent Caldwell, City of Warsaw, as defendants both individually and officially. The district court granted summary judgment for Defendants on Helms's federal claims and dismissed her related state claims without prejudice. Helms timely appealed.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Sperle v. Mich. Dep't of Corrs.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing the district court's decision to grant summary judgment, we "must view all evidence and draw all *reasonable* inferences in the light most favorable to the nonmoving party." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (emphasis added). The moving party has the burden of identifying which portions of the record before the court demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party satisfies this burden of proof, the nonmoving party must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Only facts that affect the outcome of the suit are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant "may not rest upon the mere allegations or denials of [her] pleading, but [her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to prevail on her § 1983 claim, Helms must prove that she was (1) deprived of a right protected by the Constitution or laws of the United States (2) by a person acting under color of state law. *Dean v. Byerley*, 354 F.3d 540, 546 (6th Cir. 2004). Even assuming that Helms was not trespassing until Baker asked her to leave, and recognizing that voicing one's opinion about local government policies and taxes may be a protected form of speech under the First Amendment, protected speech is not "equally permissible in all places and at all times." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985). As the district court noted, "the fact that government property is open to [the] public 'alone does not establish that such areas must be treated as traditional public fora under the First Amendment.'" *Helms v. Zubaty*, No. Civ.A.2005-56 (WOB), 2006 U.S. Dist. LEXIS 72052, at *9 (E.D. Ky. Oct. 2, 2006) (quoting *United States v. Kokinda*, 497 U.S. 720, 729 (1990)).

Instead, the Supreme Court has recognized the government's need to maintain its property for the use to which it is lawfully dedicated. The Court has adopted a forum-based analysis to help determine "when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800. The Court has identified three types of fora: the traditional public forum, the designated public forum, and the nonpublic forum. *Id.* at 802. Traditional fora are those that have long been devoted to assembly and debate "by . . . tradition or by government fiat," *Perry Educ. Ass'n v. Perry*

*Local Educators' Ass'n*, 460 U.S. 37, 45 (1983), such as sidewalks and public parks. The government can also designate a forum "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects," *Cornelius*, 473 U.S. at 802, such as open school board meetings or university spaces made available for uses typical of public fora. Even in designated public fora, the government "is not required to indefinitely retain the open character of the facility." *Perry,* 460 U.S. at 46. Content-based restrictions on speech in public and designated public fora are subject to strict scrutiny. *Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 843 (6th Cir. 2000).

In contrast, "[p]ublic property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government.'" *Perry*, 460 U.S. at 46 (quoting *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981)). Unlike in public and designated public fora, "[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806. That is, the government's decision to restrict access in a nonpublic forum "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Id*. at 808 (emphasis in the original). Moreover, "[t]he reasonableness of the government's restriction on access to a nonpublic forum must be assessed in light of the purpose of the forum and all of the surrounding circumstances." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004).

## A.       Zubaty's office is not a designated public forum.

Helms asserts that Zubaty's "open-door policy" creates a designated public forum for purposes of First Amendment analysis. On appeal, Helms claims that in order "to determine whether a constitutional violation occurred, one must determine whether Helms had a right to be in the receptionist area of the Judge Executive's office which is located in the Fiscal Court Building . . . a public building. She was present during the posted business hours. Therefore, she had a right to be there." This assertion is disingenuous, as Helms did *not* have an absolute right to be in the building, and she concedes that the Judge Executive's office, and not the building in general, is the relevant forum. *See City of Sidney*, 364 F.3d at 747 (quoting *Cornelius*, 473 U.S. at 801) ("'When speakers seek general access to public property, the forum encompasses that property.' When speakers seek more limited access, however, we must take 'a more tailored approach to ascertaining the perimeters of [the relevant] forum within the confines' of the government property at issue.").

Zubaty testified that he has "made statements in the paper that [his] office is always open to the public." Aside from her own pleadings and testimony, this is the sole evidence supporting Helms's assertion that the office is a public forum. While Helms insists that Zubaty's statements are "probative evidence" of a public forum, Baker, who works in the same suite as Zubaty, was not even aware the policy existed. Still, Helms claims that Zubaty's statement creates a question of fact over whether "the purpose of the building is the dedication to public issues pursuant to the First Amendment." Despite Helms's arguments to the contrary, there is no factual question to submit to a jury. Zubaty agreed that he has an "open-door policy." Whether this statement converts the office space into a designated public forum is a question of law.

It is well established that courts will not find a public forum where the government clearly did not intend to create one. "The government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening up a nontraditional forum for *public discourse*." *City of Sidney*, 364 F.3d at 749 (citing *Cornelius*, 437 U.S. at 802) (emphasis added). Moreover, the Supreme Court has stated that courts will not "infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity."

*Cornelius*, 473 U.S. at 803. When the "principal function of the property would be disrupted by expressive activity," such as on jailhouse grounds or military facilities, the Court has held that those spaces "do not constitute public fora." *Id.* at 804.

In this case, Helms provides only the vaguest evidence of Zubaty's intent regarding visits from members of the public. The district court found that "even assuming that Zubaty made himself accessible so that his constituents could discuss public matters with their elected official, no reasonable person could understand that the office was thus open to prolonged sit-ins, particularly when the public official with whom the citizen wishes to speak is not there." *Helms*, 2006 U.S. Dist. LEXIS 72052, at *8. As Defendants argue, "[a] private discussion between a public official and a citizen in the official's government office about a matter of public concern simply is not *public* discourse as contemplated by *Cornelius* . . . . Rather, such a discussion is *private* discourse about a public issue." (Emphasis in original.)

There is simply no evidence in this record that Zubaty designed the "open-door policy" to create a public "forum for expressive activity" in the small reception area only eight feet from an office suite he shares with several other county officials and their staff. "That [expressive] activity occurs in the context of the forum created does not imply that the forum thereby becomes a public forum for First Amendment purposes." *Cornelius*, 473 U.S. at 805. Even if Zubaty *did* intend his office to be open to the public in his absence (and there is no evidence of such intent), there is nothing to indicate that he has the power to define the nature of such a shared space for purposes of the First Amendment. Moreover, Helms's "homesteading" did not take place in Zubaty's office itself, but in a common reception area.

There is no basis for Helms's assertion that Zubaty's personal policies should preempt the county's control over a government workplace for purposes of a First Amendment analysis. The Fiscal Court's actual purpose is that of a government workplace, a forum that courts have consistently defined as nonpublic. *See Cornelius*, 473 U.S. at 805-06 ("The [government] workplace, like any place of employment, exists to accomplish the business of the employer . . . . It follows that the Government has the right to exercise control over access to the . . . workplace in order to avoid interruptions to the performance of the duties of its employees."). The district court did not err in finding that the office space in question is a nonpublic forum.

**B.      Baker's restrictions on Helms's speech in the office were reasonable and viewpoint neutral.**

The government may lawfully restrict speech in a nonpublic forum so long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum. *See City of Sidney*, 364 F.3d at 746. To bolster her argument that she was arrested based on the content of her complaints, Helms relies on (1) Zubaty's admission that he does not "tell his employees to call the police on people if they hear a cuss word" in his office and (2) no one else has ever been charged with trespass in the office. She points to the lack of comparable disruptions in the past as proof that "the content of Mrs. Helms's speech . . . influenced Defendant Baker's decision to call the police." But Helms sets forth no specific facts that might indicate that Baker was motivated by the content of Helms's speech. In the words of the trial court, "there is no evidence that Baker made any substantive response to [Helms's] remarks about the payroll tax or Zubaty . . . . Baker also did not ask that she be arrested; rather, he called the police only after she refused to leave the office, and all decisions taken thereafter were made by the police." *Helms*, 2006 U.S. Dist. LEXIS 72052, at *12.

In addition to the undisputed evidence of Helms's profanity-laced speech, Baker testified that she was preventing him from working and was interfering with Chipman's duties as receptionist. "The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." *City of Sidney*, 364 F.3d

at 751 (quoting *Cornelius*, 437 U.S. at 811).  Helms leans heavily on Chipman's testimony that she was "not disturbing anyone when Baker called the police," but overlooks Baker's *own* testimony that he was unable to work while she sat talking loudly and swearing outside his door.  Chipman also testified that Baker was unable to return work-related phone calls because of Helms's loud complaints.  Baker had a legitimate reason for asking Helms to leave the office, which Helms attempts to color retroactively with her assertions about her uniform citation.

> Helms's uniform citation reads:

> Criminal trespass 2nd.  Received comp on sub. refusing to leave the judge executives office.  Because of the payroll tax.  Sub. was advised by this unit to leave the property 2 separate times.  Sub. stated to arrest me and take me out of this office in handcuffs.

Helms asserts that "the arrest citation prepared by Caldwell stated that Helms was arrested *for the payroll tax*."  (Emphasis added.)  In contrast, the trial judge found that the language of the citation "undisputedly applies to the reason for [Helms's] refusal to leave the office." *Helms*, 2006 U.S. Dist. LEXIS 72052, at *11-12.  The trial judge misquoted the citation in his opinion by changing some punctuation, but that minor error does not affect our analysis of the case.  Helms must present more than a "scintilla of evidence" that Baker and Caldwell cooperated to deprive her of her First Amendment rights. *Anderson*, 477 U.S. at 252.

Helms's construction of the uniform citation is not supported by any other evidence in the record.  Caldwell testified that "at the time [of the arrest], I had no idea who Ms. Helms was.  And I asked what was going on.  Mr. Baker conveyed to me that Ms. Helms was being disruptive in the office, and he was unable to conduct his course of work for the rest of the evening."  There is no evidence that Baker and Caldwell discussed the payroll tax or Helms's history of protest.  Caldwell's testimony indicates that Baker only addressed Helms in terms of an unwanted presence in the office.  Helms's own testimony reveals that Caldwell repeatedly requested that she leave because "these good people have told you to leave."  The uniform citation might create a triable issue if separated from the testimony in the record, but the evidence before this court indicates an *absence* of communication between Caldwell and Baker about the reason for Helms's presence.

## C.     Officer Caldwell had probable cause to arrest Helms.

In Kentucky, a person is guilty of a Class B misdemeanor when she "knowingly enters or remains unlawfully in a building or upon premises as to which notice against trespass is given by fencing or other inclosure."  Ky. Rev. Stat. Ann. § 511.070.  Kentucky law also provides that one who remains in a public space does so with license "unless [s]he defies a lawful order not to . . . remain." *Id*. § 511.090(2).  When examining probable cause to make an arrest, the court must look to the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citation and internal punctuation omitted).

When Officer Caldwell arrived in the office suite, he could "tell by Mrs. Helms's tone that she was somewhat agitated," although she was still sitting in a chair across from Chipman.  Helms emphasizes this testimony in an effort to argue that "Caldwell did not witness criminal trespass," claiming that because she was not yelling and did not present a physical threat, the district court erred in finding that she was disrupting the office.  The nature of Helms's behavior is immaterial to criminal trespass as applied here.  Officer Caldwell witnessed Helms defying "a lawful order not to . . . remain."  Ky. Rev. Stat. Ann. § 511.090(2).  Criminal trespass concerns *presence*, not behavior.  The undisputed evidence establishes that Helms received and refused several requests to leave the

office before she was arrested. Caldwell himself asked Helms to leave the premises twice, indicating that he did not want to arrest her. She refused. Helms's argument here is absurd in light of the facts and the plain meaning of "trespass."

Because we find no constitutional violation, we do not reach the issue of qualified immunity as to Baker and Caldwell or Helms's individual claims against the other Defendants. Helms has failed to argue her claims against Defendants in their official capacities before this court, and accordingly we deem them waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.