**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 19a0026n.06**

**No. 18-1583**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 16, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WEST MICHIGAN BAND INSTRUMENTS, LLC, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| COOPERSVILLE AREA PUBLIC SCHOOLS; RONALD VELDMAN; LISA BORST, | ) ) ) ) | |
| Defendants-Appellees. | ) | |

---

**BEFORE:**   **BOGGS, KETHLEDGE, and STRANCH, Circuit Judges.**

**BOGGS, Circuit Judge**.  This is a free-speech case brought under the First and Fourteenth Amendment, challenging a public school's preferred-vendor policy on grounds of viewpoint-based discrimination.  For the reasons set forth below, we affirm the district court.

I

West Michigan Band Instruments, LLC (WMBI) sells and rents band instruments to students in public-school districts throughout Western Michigan, including Coopersville Area Public Schools (CAPS).  CAPS offers a fine-arts program to its students, which includes a middle-school band and a high-school marching band, concert band, jazz band, and pep band.  Like many school districts, CAPS requires band students and their parents to participate in an annual meeting known as "Band Night."  The purpose of Band Night is to provide information to students and parents about the opportunities and responsibilities of the band program, information about renting

or purchasing band instruments, and advice about the type and size of instrument each student should use, a process known as fitting students to their instruments.

CAPS had traditionally invited various instrument vendors, including WMBI, to attend Band Night so that they could provide students and parents with information about their products and services and directly supply them with instrument purchase and rental agreements. In April 2017, CAPS issued an invitation to bid ("ITB") to vendors to serve as the school district's instrument-repair vendor and to become the exclusive vendor at Band Night. WMBI submitted a bid, but also sent a letter to the CAPS superintendent objecting to the exclusive-vendor policy as unlawful. CAPS refused to change the ITB. In June 2017, WMBI lost to its competitor, Meyer Music, which became the only vendor allowed to attend Band Night at the beginning of the 2017 school year. WMBI filed suit against CAPS[1] claiming it engaged in viewpoint discrimination by only permitting Meyer Music to participate in Band Night. Defendants filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss, which was granted by the district court on grounds that WMBI failed to state a constitutional claim against defendants. WMBI filed this appeal.

II

The district court's decision to grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6) is reviewed de novo. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). This court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Ibid.* A court need not accept as true legal conclusions where recitals of the elements of a cause

---

[1] WMBI also filed suit against Superintendent Ronald Veldman and band director Lisa Borst in their official capacities. The district court dismissed those claims, citing redundancy of official-capacity claims against individuals in a suit against the governmental entity itself. WMBI does not contest that dismissal.

of action are supported by mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Likewise, a legal conclusion couched as a factual allegation need not be accepted as true. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012).

At issue here is whether school districts can influence commercial transactions between students and parents and a private vendor by creating an exclusive forum for a preferred vendor and excluding non-preferred vendors from access to that forum. WMBI argues that CAPS's exclusive-vendor policy results in viewpoint-based discrimination in violation of the First and Fourteenth Amendments.

CAPS, as a public-school district, is a governmental entity operating on government-owned property. To determine the constitutionality of a governmental restriction of speech on publicly owned property, a court must consider 1) whether the speech is protected under the First Amendment, 2) what type of forum is at issue, and 3) whether the restriction on speech satisfies the constitutional standard of the forum. *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). The district court held, and it is not disputed on appeal, that WMBI is engaged in protected commercial speech and that Band Night is either a limited public forum or a nonpublic forum, both of which require only that a government restriction on speech must be viewpoint neutral and reasonable in light of the purpose served by the forum. Id. at 534-35.

III

A (Viewpoint Neutral)

WMBI alleges that CAPS's exclusive-vendor policy is a "viewpoint-based restriction on commercial speech," and a "paternalistic government policy" designed to steer the public toward the government's preferred vendor by restricting the free flow of commercial information and the

ability of band students and parents to make informed decisions about where to purchase or rent their instruments. On appeal, WMBI argues that CAPS's exclusion policy prevented WMBI from expressing its viewpoint that it, not Meyer Music, is the superior vendor for CAPS's band students and parents. WMBI argues that it was deprived of its First Amendment right to use expressive actions to legitimize itself and establish its worth in the eyes of band students and their parents at Band Night. In short, WMBI's viewpoint is that it is the best instrument vendor for band students and parents. The problem for WMBI is that it failed to plead this or any other viewpoint in its First Amended Complaint. The closest WMBI comes to articulating a viewpoint is alleging that one of the purposes of Band Night is to "provide the students and parents with information about purchasing and renting band instruments." Nowhere does WMBI allege any viewpoint that is discriminated against by CAPS preferred-vendor policy.

Even assuming that WMBI had properly alleged a viewpoint, WMBI fails to distinguish CAPS preferred-vendor policy from other acceptable governmental contracts. In many school contracts, the school directly purchases a service or product from the vendor, e.g., contracts for textbooks, school buses, school security, or printing supplies. Schools also act as facilitators between third parties and students and parents, e.g., schools select vendors to take student photos, *Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032 (11th Cir. 1998); schools select vendors for students to purchase class rings; schools select vendors for athletes to purchase equipment or uniforms not directly provided by the school; schools select vendors for students to purchase school uniforms; schools select vendors to sell concessions at athletic events; schools select books (and sometimes publishers) on a reading list. CAPS is acting as a facilitator, providing one instrument company exclusive access in a limited time and space to potential non-governmental customers, i.e., students and parents who purchase or rent instruments.

We hold that WMBI is a vendor who was excluded from a school forum, not because of its viewpoint, but because of its status as a non-preferred vendor who lost to Meyer Music in the bidding process. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983). As noted by the district court, this type of "discrimination" occurs every time a governmental entity chooses a private company after a competitive bidding process. Every contract is a burden on commercial speech, as "[a]ll contracts are by their nature exclusionary." *Foto USA*, 141 F.3d at 1037–38. WMBI syllogistically argues that its status as a non-preferred vendor is by definition viewpoint based, and therefore discriminating on the basis of status is viewpoint-discrimination. No authority is cited to support this assertion. We hold that CAPS's preferred-vendor policy is viewpoint neutral.

## B (Limiting attendance is reasonable in light of purpose of forum)

In addition to being neutral, the preferred-vendor policy must also be reasonable. Government entities can limit speakers based on identity (status) or subject matter (content) in a limited public forum or a nonpublic forum as long as the restrictions are reasonable in light of the purpose served by the forum. *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007). As held by the district court, Band Night "is not intended as a purely capitalistic free-for-all for the area['s] band vendors to compete for the attention of the students for profit." Band Night's purpose is to educate band students and their parents about the band program and to assist students in selecting and getting properly fitted to their instruments. According to CAPS, restricting vendor attendance minimizes competition for the attention of parents and students that could detract from the ability to provide information about the band program itself. An exclusive bidding process also reduces crowding and ensures that the vendor present at the meeting meets CAPS's standards. In that

context, the district court held that allowing only a single vendor at Band Night, after a competitive bid process, to be "eminently reasonable." We agree.

In *Pagan v. Fruchey*, 492 F.3d 766 (6th Cir. 2007) (en banc), this court considered whether a local traffic ordinance prohibiting the placement of a "For Sale" sign on a vehicle parked on a public street was an unconstitutional restriction on commercial speech in violation of the First Amendment. Restrictions on commercial speech are subject to a form of intermediate scrutiny that requires the government to justify its form of regulation on commercial speech. *Pagan,* 492 F.3d at 770–71; *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564-66 (1980). The government must demonstrate that the restriction on commercial speech directly and materially advances a substantial governmental interest, and "even common-sense decisions require some justification." *Pagan*, 492 F.3d at 777. In *Pagan*, the restriction on "For Sale" signs on cars was supported only by a police chief's simple conjecture that something might occur if people stopped to look at a "For Sale" sign on a parked vehicle. *Id*. at 772-73. *Pagan* held that such speculation was not a justification and that there was a complete absence of evidence that any harm would be addressed by the ordinance. *Ibid.* Unlike *Pagan*, as set forth above, CAPS does provide several common-sense reasons for its preferred-vendor policy. In so doing. CAPS's policy is reasonable and withstands intermediate scrutiny.[2]

For the reasons set forth above, we AFFIRM the district court's dismissal of this case under Fed. R. Civ. P. 12(b)6.

---

[2] In its reply brief, WMBI raises a new argument that CAPS's exclusive-vendor policy was not reasonable because it arguably violated Mich. Comp. Laws § 380.1805, which prohibits school officers and teachers, as individuals, from acting as agents of "an author, publisher, or seller of schoolbooks or school apparatus." This argument has been forfeited because it was not raised in its initial brief. *Marks v. Newcourt Credit Grp., Inc*., 342 F.3d 444, 462 (6th Cir. 2003). Further, CAPS's alleged violation of the Michigan school code does not go to the question of whether CAPS violated WMBI's free-speech rights under the First and Fourteenth Amendments.