[No. 34205.   Department One.   April 10, 1958.]

DARRELYN A. DUPREY *et al., Minors, by their Guardian, T. Edward Duprey, et al., Appellants,* v. ROBERT M. DONAHOE *et al., Respondents.*[1]

[1]Reported in 323 P. (2d) 903.

*MacDonald, Hoague & Bayless* and *H. Joel Watkins,* for appellants.

*Elton B. Jones,* for respondents.

Oтт, J.—Bertha P. Wright, as seller, entered into an executory contract of sale of real estate with T. Edward Duprey and Nina E. Duprey, his wife. Subsequently, Nina E. Duprey died. In the probate proceedings, the vendees' interest in the contract was distributed in equal portions to her three minor children, David W. Jones (H. Joel Watkins, guardian), and Darrelyn A. Duprey and Deanna M. Duprey (T. Edward Duprey, guardian).

The guardians, with approval of the court, entered into a lease of the premises to Robert M. Donahoe and Myrtle M. Donahoe, his wife, for a term of two years, from March 1, 1954, to March 1, 1956, at a monthly rental of one hundred dollars. The contract contained the following option to purchase provision:

"THAT in consideration of the payment by Lessees to Lessors of the sum of $500 heretofore made, receipt of which is hereby acknowledged, and the further sum of $1,000 in cash to be paid to Lessors within one year from date hereof, Lessors in addition hereby give, grant and convey to Lessees the right and option to purchase said real estate at any time within the term of this lease for a total purchase price of $12,500 in cash. In the event of the exercise of this option, all sums theretofore paid under this lease, whether in consideration of such option or as rent, less an amount equal to 5 per cent of the unpaid balance on such purchase price calculated as if the sale had been made on March 1, 1954, to date of full payment shall be credited toward the purchase price, and title shall be conveyed by guardian's deeds, at which time, title insurance policy shall be furnished to Lessees in full amount of purchase price."

The lessees paid the fifteen hundred dollars for the option privilege, and the monthly rent up to February 1, 1956. February 29, 1956, Mr. Donahoe went to the office of the attorney for T. Edward Duprey, guardian for two of the minors, and presented a letter which read as follows:

"In accordance with our telephone conversation, we are enclosing check for two hundred dollars ($200.00), covering February and March payments on option to purchase above property.

"We would appreciate the extension of the option for a period of from ninety to one hundred and twenty days as

we are obtaining an F.H.A. commitment and we will be in a position to pay the guardianships off at that time."

Mr. Donahoe, at that time, stated orally to the attorney for the guardian, "I am exercising my option." The same day, Mr. Donahoe requested the Washington Title Insurance Company to furnish a title report. A copy thereof was sent to the attorney for the guardian. The report indicated, *inter alia*, that, as of March 1, 1956, title was vested in Bertha P. Wright; that 1956 real-estate taxes remained unpaid; that a lien for excise sales tax would exist, if unpaid; that there was an unrecorded contract for the sale of the property to T. Edward Duprey and Nina E. Duprey, his wife, as disclosed by a proceeding had in King county superior court cause No. 448135; that the vendees' interest was held of record by the minors; that there was an unrecorded lease, with option to purchase agreement, to Robert M. Donahoe and Myrtle M. Donahoe, his wife, and that, in the event of the exercise of the option to purchase, any sale of the premises by the guardians, acting for the minors, would require an order of the court, in accordance with the provisions of the statute.

March 12th, the attorney for the guardian wrote a letter to Mr. Donahoe, which read in part as follows:

"I have discussed your request for an extension of the option with H. Joel Watkins, guardian for David W. Jones, and with Ed Duprey, guardian for the two girls.

"We are in accord that you have not exercised the option within the terms of the lease and option agreement dated March 1, 1954, because such agreement requires the purchase price to be paid in full within the period covered by the option agreement."

As a result of Mr. Donahoe's insistence that he had exercised the option, and the insistence of the attorney for the guardian that the option had not been exercised, Donahoe's check for two hundred dollars was returned.

July 2, 1956, Darrelyn A. Duprey and Deanna M. Duprey, by their guardian, and David W. Jones, in his individual capacity (having reached the age of majority), commenced this action against Robert M. Donahoe and Myrtle M.

Donahoe, his wife, alleging unlawful detainer of the premises by the defendants and praying for restitution thereof and for judgment against the defendants for "the amount of the rent found due, doubled, as in accordance with R.C.W. 59.12.170."

The defendants' answer denied, *inter alia*, the allegation with reference to unlawful detainer. They affirmatively pleaded that they were lawfully in possession, in that they had exercised their option to purchase, and had requested the plaintiffs to execute and deliver the necessary documents for closing the transaction, all of which the plaintiffs had failed and refused to do. Defendants prayed for specific performance.

The reply denied the affirmative matters pleaded. The cause proceeded to trial to the court upon the issues thus joined.

The court found that the defendants had exercised the option. The decree allowed thirty days within which the defendants were to deposit the balance of the purchase price, and the plaintiffs were to deposit the necessary conveyances and title insurance in escrow. Subsequently, within the thirty days, the defendants so deposited the balance determined to be owing on the contract.

Plaintiffs have appealed, assigning as error the court's finding that the option had been exercised.

Appellants contend that, by the terms of the option contract, a tender of the purchase price was necessary in order to constitute an acceptance, and that such tender in cash had to be made not later than February 29th, the last day of the lease.

The pertinent portion of the option provision in the lease states that the lessees shall have "the right and option to purchase said real estate at any time within the term of this lease for a total purchase price of $12,500 in cash."

Did the giving of notice that the lessees were exercising their option constitute an *acceptance*, within the terms of the option provision?

In the absence of any provision in the option contract with reference to the manner by which an option can

be exercised, it is the general rule that any manifestation, either oral or written, indicating an acceptance on the part of the optionee is sufficient. 55 Am. Jur. 507, § 38; 1 Corbin on Contracts 872, § 264.

Appellants contend that the written acceptance which was delivered on the same day that the oral acceptance was made indicated a conditional acceptance, when a request was made for an extension of the option.

■ When it appeared to the attorney for the sellers that the second paragraph of the letter included a request for an extension of the option, the attorney demanded to know if the optionees were exercising the option, to which Robert Donahoe answered, "I am exercising my option." Both the letter and the oral expression made by the optionee established that the option was being unconditionally accepted. The general rule is that,

"If the optionee attaches conditions not warranted by the terms of the option to his acceptance or notice of his election to buy, this itself amounts to a rejection; but it is otherwise where the acceptance is in the first instance unconditional, and *a mere request* is added for a departure from the terms of the option as to the time and place of completing the transaction." (Italics ours.) 55 Am. Jur. 508, § 39.

To the same effect, 91 C. J. S. 855, § 10.

■ The written acceptance was simply a request for an extension of the option and does not indicate that the acceptance was conditioned upon the granting of the request.

Nor do we agree with appellants' contention that the exercise of the option required a tender of the cash at the time the option was exercised.

■ The option contract provided (a) that the purchase price of the property at the time the option was exercised would be fixed at $12,500, and (b) that the sale must be in cash. The words, "in cash," mean a cash sale, as distinguished from an executory contract of sale. A cash sale has been defined as "one conditioned on payment concurrent with delivery of the deed." *Hecketsweiler v. Parrett*, 185 Ore. 46, 200 P. (2d) 971 (1948). See, also, *Loewi v. Long*, 76 Wash. 480, 486, 136 Pac. 673 (1913).

■ When, as here, no time is specified in the option agreement for the final payment and delivery of the instruments of conveyance, the time of payment and delivery is a reasonable time after acceptance of the offer. 91 C. J. S. 852, § 8.

■■ There is a distinction between an acceptance of an offer to purchase and the closing of a sale, after the option has been exercised. The acceptance of an offer to sell real estate creates a binding obligation on both parties. The closing of the sale thereafter is the fulfillment of the obligations created by the contract. We conclude that, when the closing date is not definitely fixed in the contract, a reasonable time after acceptance must be allowed to perform. See *Foelkner v. Perkins,* 197 Wash. 462, 85 P. (2d) 1095 (1938), and cases cited.

■■ In order to sustain their action of unlawful detainer, the burden was upon the appellants to prove, by a preponderance of the evidence, their right to possession. The possession of a tenant is originally lawful, and is so presumed until the contrary appears. *Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 378, 184 Pac. 327 (1919). Our review of the record convinces us that appellants have failed to meet this burden.

■ Since we hold that respondents properly exercised their option to purchase, they then became entitled to a proper execution and delivery of the deed. It was not necessary that respondents tender the purchase price to the appellants or deposit the same into the registry of the court, when the appellants denied the existence of a contract. The law will not require one to perform a useless act. *Brewster Cooperative Growers v. Brewster Orchards Corp.,* 21 Wn. (2d) 288, 150 P. (2d) 847 (1944).

■ The record contains nothing which would support a holding that respondents at any time lost their right to receive such a delivery. The trial court properly decreed specific performance of this contract.

■ Specific performance is a proceeding in equity. *Cascade Tbr. Co. v. Northern Pac. R. Co.,* 28 Wn. (2d) 684,

184 P. (2d) 90 (1947); *Brewster Cooperative Growers v. Brewster Orchards Corp., supra; Hardinger v. Blackmon,* 13 Wn. (2d) 94, 124 P. (2d) 220 (1942). The trial court, exercising such equity jurisdiction, determined that the respondents had acted in good faith, and that a thirty-day period was a reasonable time for both the sellers and the purchasers to close the transaction, in accordance with the terms of the contract.

We find no merit in appellants' assignments of error.

The judgment is affirmed.

HILL, C. J., FINLEY, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—The majority opinion cites and relies upon the rule that

"*In the absence of any provision* in the option contract with reference to the manner by which an option can be exercised, it is the general rule that any manifestation, either oral or written, indicating an acceptance on the part of the optionee is sufficient. 55 Am. Jur. 507, § 38; 1 Corbin on Contracts 872, § 264." (Italics mine.)

This rule is not applicable to the facts of this case because of its specific provision requiring the payment of the full cash purchase price before the option expires. The rule relied upon applies to that type of option which is in the nature of an offer for a promise. In such a case, of course, the acceptance is made by making the promise. The resulting contract is bilaterally executory.

The type of option here in question, which requires the payment of the cash before the expiration date, is an offer for an act—the act of paying or tendering the cash. Thus, the exercise of the option results in a contract executory only on the sellers' part by way of conveying the title. Such options are intended to eliminate credit negotiations, contingencies, and hazards.

In *Killough v. Lee,* 2 Tex. Civ. App. 260, 21 S. W. 970, the court said:

" 'Where the contract is really an offer on one side, with a provision that this offer must be assented to and accepted, when a mere acceptance is contemplated, or payment must

be made when payment was the act of acceptance contemplated, at or before a specified date, then of course the act of assent or of payment must be done within the prescribed time; and time is from the very form of the contract essential. If, therefore, a vendor agrees to convey if payment be made at or before a given date, or if an option is given which is to be accepted by payment within a given time, then the time of payment is certainly essential; in fact, payment is a condition precedent to the vesting of any right in the vendee. If, however, the offer or option given requires assent and acceptance within a given time, such assent must be made within the time prescribed, and the contract thereby becomes concluded and mutual; but whether time is essential with respect to subsequent performance must depend upon its object or the nature of its subject matter.' Pome. on Con. sec. 387.

"The contract under consideration required not simply that appellant should assent to the terms proposed within the six days, and pay the price at some subsequent time, but that he should buy within that time, paying the price in cash. Thus payment was made essential by the agreement of the parties, which the court can not disregard without infringing upon their right to shape their own contracts as they deem best."

See, also, *Bergman v. Dykhouse,* 316 Mich. 315, 25 N. W. (2d) 210.

An option to purchase for cash is exercised by payment of the cash, not the giving of a bare unsecured promise to pay.

I dissent.

***

July 10, 1958. Petition for rehearing denied.