George BRANGIER, Appellant,

v.

John B. ROSENTHAL, Appellee.

No. 18789.

United States Court of Appeals Ninth Circuit.

Nov. 2, 1964.

Rehearing Denied Dec. 14, 1964.

Daral G. Conklin, J. Russell Cades, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for appellant.

Thomas W. Flynn, Bernard H. Levinson, Honolulu, Hawaii, for appellee.

Before CHAMBERS, KOELSCH, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

In April 1958 appellant agreed to sell a parcel of land in Tahiti to appellee for $35,000. Ten thousand dollars was to be paid immediately, $25,000 to be exchanged for title documents through an escrow agent. Appellant cancelled the agreement in October 1960, and sold the property to another. Appellee brought a diversity action in the court below for damages for breach of contract and recovered a judgment from which this appeal was taken.

The district court prepared an exhaustive written opinion, analyzing the whole of the evidence and stating the reasons for its decision in careful detail. We confine our discussion to matters raised by appellant's specifications of error, and to those portions of the evidence necessary to their disposition.

1. Appellant contends that the court should have held that performance was rendered impossible, and was therefore excused, because of the refusal of the French government to consent to a transfer of a fee simple title.

The district court concluded that there was "no true impossibility of performance by [appellant], since he was able to convey, and [appellee] was willing to accept, the lesser title under a lease-mortgage arrangement." We think this conclusion correct, both in fact and in law.[1]

After the initial refusal of the French government to consent to transfer of the fee simple title to appellee, appellant suggested that the transfer be accomplished through a corporation to be formed for that purpose. This failing, he later suggested a lease-mortgage arrangement,[2] an interim device commonly used in Tahiti when government consent

---

1. We therefore need not consider the possible applicability of the rule that one who binds himself to a contract which cannot be performed without the consent of a third person is not relieved of liability by inability to secure the required consent. See, e. g., Hensler v. City of Los Angeles, 124 Cal.App.2d 71, 268 P.2d 12 (1954); Note, 24 So.Cal.L.Rev. 492 (1951); 6 Corbin, Contracts §§ 1340, 1347 (1963 ed.); 6 Williston, Contracts § 1932 (rev. ed. 1938). See also Koon v. Maui Dry Goods & Grocery Co., Ltd., 29 Haw. 669 (1927).

2. The vendee pays the vendor the price agreed upon for the fee simple. The vendor gives the vendee a renewable lease with option to purchase, and executes a mortgage on the fee in the amount of the purchase price. Lease rent and mortgage interest are equal, and offset each other.

to a fee simple transfer is not immediately obtainable. The district court found that the lease-mortgage arrangement was offered by appellant as an alternative to transfer of the fee should the latter be precluded by continued refusal of the French to consent, and was accepted as such by appellee. If this finding is not clearly erroneous, it would follow as a matter of law that even if transfer of the fee were impossible, appellant would not be relieved of his duty to execute the lease and mortgage. Yankton Sioux Tribe of Indians v. United States, 272 U.S. 351, 358, 47 S.Ct. 142, 71 L.Ed. 294 (1926); Restatement, Contracts § 469 (1932).

■■ Appellant disputes the factual premise, arguing that appellant's offer of the lease-mortgage alternative was never accepted by appellee. We think the record amply supports the court's conclusion to the contrary. Appellee's letter responding to appellant's offer indicated clearly enough an unconditional acceptance of the alternate procedure. Appellee's assent being clear and unqualified, the requests, inquiries, and mild grumblings which accompanied it did not convert it into a counteroffer. 1 Corbin, Contracts §§ 84, 93 (1963 ed.); 1 Williston, Contracts § 79 (3d ed. 1957). Appellant himself testified that a binding agreement to use the alternate procedure had been reached. Both parties acted upon that premise in subsequent efforts to complete the transaction.

Appellant contends that by the terms of the offer of the lease-mortgage alternative, appellee was required to pay the $25,000 balance to appellant's attorney to hold in escrow, and to instruct appellant's attorney to prepare an escrow agreement, and that appellee did neither. We read the documents (as the district court did) as requiring only that appellee notify the attorney that he was to draw up the agreement, and that appellee deposit the $25,000 with the attorney when the document was ready. Appellant's attorney received a copy of appellant's offer, and was thus aware of these obligations which acceptance would impose on appellee. Appellee's letter of acceptance was actually addressed to appellant's attorney, and was itself sufficient notice to the latter to prepare the required agreement. Moreover, as the district court held, appellee's statement in the same letter that a check for $25,000 could be sent to the attorney to hold in escrow "at any time" necessarily implied that the attorney was to proceed with preparation of the escrow documents. As the district court said, appellee's letter of acceptance "was a substantial compliance by [appellee] with the requirements laid down" by appellant's offer. Furthermore, appellee again offered to pay the $25,000 when desired in a second letter addressed to appellant's attorney a month before appellant's attempted cancellation; and, in addition, appellee testified that he orally offered to deposit the $25,000 whenever it was desired. It does not appear that the escrow papers were ever prepared or presented to appellee.

2. Appellant contends that the district court should have held that since the contract stated no time for performance the parties were assumed to have intended a reasonable time, and that appellant rightfully terminated the contract in October 1960 because more than a reasonable time had then elapsed without performance.

What we have said disposes of appellant's contention that the delay of the French government in approving a transfer of title justified cancellation: appellant remained bound to consummate the lease-mortgage arrangement, for which government consent was not required.

■ What we have said also disposes of appellant's contention that appellee failed to discharge within a reasonable time his obligation to give notice to appellant's attorney to prepare the escrow agreement, and to deposit the $25,000. Appellee's acceptance was written within two weeks after appellant's offer of a lease-mortgage arrangement, and, as we have said, was in itself sufficient performance by appellee.

■ Moreover, the district court found, and the finding has sufficient sup-

port in the record, that appellant "by his actions had clearly waived any delay in making the deposit, and there is no evidence whatsoever, other than some testimony of [appellant] (which the court disbelieves), that would indicate that [appellant] at any time before he made the sale to [the third party] or before he purported to cancel the transaction with [appellee], had considered the failure to make the $25,000 deposit as a material breach of any condition, or had made any demand for such deposit."

Appellant argues that, in any event, his letter of October 4, 1960, cancelling the agreement was sufficient notice to impose upon appellee an obligation to tender performance within a reasonable time thereafter, and that appellee failed to do so. Appellant's letter was based solely on the ground that performance was impossible because of the continued refusal of the French government to consent to the transfer (a ground which the district court properly held untenable); nothing in the letter suggested that appellee was in default for failure to notify appellant's attorney to prepare the escrow papers, or to pay the $25,000.

3. Appellant contends that the district court misread the correspondence forming both the basic sales agreement and the supplementary agreement with respect to the time at which the $25,000 was to be deposited with the escrow agent.

Even if the initial agreement could be construed as requiring an immediate deposit, the district court's finding that appellant acquiesced in the delay of payment, and thus condoned any breach, is, as we have said, amply supported by the record. We have stated our reasons for thinking that the district court properly interpreted the supplemental agreement.

4. Appellant suggests that the district court mistakenly supposed that certain correspondence related to the lease-mortgage escrow agreement when in fact it related to a quite different agreement, and that certain findings adverse to appellant rested upon this error.

Appellee had proposed that the parties execute an agreement in the United States, separate from, but supplemental to, the Tahitian lease-mortgage documents. He asked that appellant's lawyer draft such a supplemental agreement. Although no objection was made to the substance of the suggestion, appellant's attorney took the position that he could not draft the proposed supplemental agreement until he was advised of the terms of the lease-mortgage documents. The proposed supplemental agreement was never drawn. The district court found that in fact appellee had given the necessary information to appellant and therefore appellant was at fault for his attorney's failure to draft the document. Appellant now contends that the trial court mistakenly supposed that this supplemental agreement was the escrow agreement required by the terms of appellant's offer of the lease-mortgage alternative, and thus erroneously concluded that appellant rather than appellee was responsible for the failure to draft the latter.

The language used by appellant's counsel in suggesting that he could not proceed until the terms of the lease-mortgage were agreed upon was that it would be impracticable for him to draft "any kind of contract," or "any supplemental agreements." Perhaps the district court properly read this language as including the escrow agreement as well as the supplemental agreement. But even if this were not so, we are satisfied that the error would not have affected the court's ultimate findings. As we have noted, the court concluded (and we agree) that appellee's letter of acceptance was itself sufficient notice to appellant's attorney to draft the escrow agreement. For this wholly independent reason, appellant and not appellee must be charged with the failure to prepare the escrow agreement.

5. Appellant asserts that the court erroneously denied him the opportunity to cross-examine appellee regarding certain prior inconsistent statements. The court did not rule that appellee could not be cross-examined regarding these

**956**

statements for purposes of impeachment. Indeed, the documents containing the assertedly impeaching statements were admitted into evidence, and in its written opinion the court discussed the prior statements as bearing upon appellee's credibility as a witness. The court sustained objections to the questions only on the ground that in form the questions were argumentative and speculative. Even if the court erred in this ruling, we think the error was inconsequential.

6. As we understand it, the elaborate and ingenious argument made on the issue of damages in appellant's reply brief comes to this: The measure of damages adopted by the trial court could be applied only to a breach by appellant of the agreement to enter into a lease-mortgage arrangement, and not to a breach of the agreement to transfer the fee; but the only evidence in the record bore upon the value of the fee simple, there being no evidence in the record relating to the value of the inferior lease-mortgage interest that would have passed to appellee.

The lease-mortgage device contemplates payment by the promisee of the full purchase price agreed upon as the value of the fee simple, and is intended to transfer to the promisee in return all of the promisor's interest that can be transferred, short of title itself. It so far succeeds that it may be questioned whether the value of the interest transferred can be distinguished from that of the fee. In any event, it was proper for the district court to base damages upon the value of the fee itself in the present case, as the lease-mortgage arrangement agreed to by the parties would have given appellee an absolute right to the fee when French consent was obtained, and such consent was in fact given after the purported cancellation and before appellant sold to a third party. Although the consent was qualified, the court concluded upon adequate evidence that the conditions imposed did not materially affect the value of the title which could have been transferred, and appellee had expressed his willingness to accept the transfer as approved.

We read the reply brief as a tacit abandonment of the contentions on the damage issue in appellant's initial brief; but, in any event, we have examined these arguments as well and are satisfied that they must be rejected.

Affirmed.