RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0141p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────

DAVID AGEMA; ELIZABETH GRIFFIN; MARK GURLEY; WILLIS SAGE,

                *Plaintiffs-Appellants,*

    *v.*

CITY OF ALLEGAN; RICK HOYER, Chief of Police, City of Allegan; ALLEGAN PUBLIC SCHOOL DISTRICT; JIM MALLARD, Principal, individually and in his official capacity as a Principal in the Allegan Public School District,

                *Defendants-Appellees.*

No. 15-1431

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cv-00417—Janet T. Neff, District Judge.

Argued: April 28, 2016

Decided and Filed: June 16, 2016

Before: MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges

─────────────

**COUNSEL**

**ARGUED:** Erin Elizabeth Mersino, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellants. Thomas R. Meagher, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, for Appellees City of Allegan and Rick Hoyer. Mark T. Ostrowski, KLUCZYNSKI, GIRTZ, & VOGELZANG, Grand Rapids, Michigan, for Appellees Allegan Public School District and Jim Mallard. **ON BRIEF:** Erin Elizabeth Mersino, Richard Thompson, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellants. Thomas R. Meagher, Liza C. Moore, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, for Appellees City of Allegan and Rick Hoyer. Mark T. Ostrowski, KLUCZYNSKI, GIRTZ, & VOGELZANG, Grand Rapids, Michigan, for Appellees Allegan Public School District and Jim Mallard.

DONALD, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined and MERRITT, J., joined in part.  MERRITT, J. (pp 12–17), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

BERNICE BOUIE DONALD, Circuit Judge.  David Agema, Elizabeth Griffin, Mark Gurley, and Willis Sage ("appellants") wanted to stage an event at a public high school to provide information about proposed legislation to prevent Sharia law from being used in Michigan, and to warn about the dangers posed by radical Muslims generally.  After receiving and investigating a tip that one of the speakers had a significant bounty on his head, authorities canceled the event.  Shortly thereafter, the appellants brought this suit, asserting claims under both 42 U.S.C. § 1983 and state law against the city of Allegan and its police chief Rick Hoyer ("Hoyer"), as well as the school district and the high school principal Jim Mallard ("Mallard").

The appellants appeal from the district court's decisions to (1) dismiss their complaint for failure to state plausible 42 U.S.C. § 1983 claims against the city of Allegan, (2) allow the school district to withdraw its Fed. R. Civ. P. 68 offer to stipulate to judgment, and (3) grant summary judgment to the school district.  We **AFFIRM** in part and **REVERSE** in part.

**I.**

A.  Factual Background

This case stems from a free speech event organized by the appellants at Allegan High School on January 26, 2012.  The event was intended "to inform the public about the importance of honoring the United States and Michigan Constitutions in Michigan schools" and to educate the public about David Agema's ("Agema") House Bill 4769, which aimed to limit foreign law's influence in Michigan.  Appellant Br. 7.  The appellants also wanted to warn citizens about the "internal threat to America posed by radical Muslims" and "to alert the public about the dangers to our free society caused by the imposition of Sharia law."  First Amended Complaint, R. 49, Pg. ID# 595.  The event featured Kamal Saleem ("Saleem"), founder of Koome Ministries.  The

appellants allege that he has a unique perspective on threats posed by radical Islam and Sharia law as a former terrorist who converted to Christianity.

The Allegan Public School District agreed to rent a room to the appellants on January 26, 2012 from 6:00 pm to 9:00 pm. The appellants paid the customary $90 fee. On or about January 24, 2012, Dawud Walid, Executive Director of the Council on American-Islamic Relations, Michigan ("CAIR-MI") and Michael Keegan, President of the People for the American Way ("PFAW"), wrote a joint letter to Allegan Public School District Superintendent Kevin Harness ("Harness"). The letter argued that Saleem was a purveyor of hatred and intolerance, and questioned Saleem's claims about his life story. The letter further asked the district to rescind its permission for Saleem to use Allegan High School's facilities. Allegan High School received several calls expressing the view that Saleem should not speak at the school. Saleem's planned participation in the event also received local press coverage.

Shortly before the event began, an unidentified woman approached the police, claiming that Saleem had a $25 million bounty on his head. The parties dispute the extent to which Saleem's body guard Kevin Jones ("Jones") corroborated the rumor. According to appellant Willis Sage ("Sage"), Jones said the rumor was five years old, and that any bounty was not $25 million. According to Hoyer however, the bodyguard implicitly acknowledged that there was a bounty.

The event began. When it was well underway, authorities shut it down. The parties dispute whether there were other events going on at the school when the event was canceled. The appellants allege that the defendants allowed people to stay in the school building for thirty to forty-five minutes after police shut the event down, and that Saleem remained safely inside without surveillance from law enforcement. The appellants allegedly transferred the event to Sunset Lanes in Allegan.

B.  Procedural History

The appellants initiated a lawsuit under 42 U.S.C. § 1983 and asserted various state law claims with a first complaint on April 30, 2012. With leave of the court, the appellants amended their complaint on January 8, 2013. The amended complaint advanced four claims for relief.

The first count charged the city of Allegan, Allegan School District, Hoyer, Harness and Mallard with abridging the appellants' freedom of speech under the First Amendment. The second count charged the above defendants with abridging the appellants' freedom of assembly under the First Amendment. The third count charged Allegan School District with breach of contract under Michigan law. Finally, the fourth count charged Walid, CAIR-MI, PFAW, and Keegan with tortious interference of contract under Michigan law.

a) Motion to Dismiss

On January 22, 2014, the district court granted the city of Allegan's Fed R. Civ. P. 12(b)(6) motion to dismiss for claims one and two. At the same time, it dismissed claims one and two against Hoyer as redundant. The district court further held that CAIR-MI, Walid, PFAW, and Keegan were immune from suit under the Noerr-Pennington doctrine. *See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). The appellants do not challenge the district court's dismissal of the claims against CAIR-MI, Walid, PFAW, and Keegan. They also do not challenge the decision to dismiss Hoyer as redundant.

b) Motion to Stipulate to Judgment

On January 22, 2013, the school district and Mallard filed an offer of judgment pursuant to Fed. R. Civ. P. 68 for a lump sum of $500. On January 23, 2013, the school district and Mallard's attorney, William Vogelzang ("Vogelzang"), asked the appellants to hold off on accepting the offer because "my client may be having second thoughts about this." Stipulation to Judgement Emails, R. 76-4, Pg. ID# 822. Later on January 23, 2013, the appellants purported to accept the offer. In the acceptance, the appellants wrote the following:

> Plaintiffs accept in full the Offer of Judgment filed by Defendants Allegan Public School District, Kevin Harness, and Jim Mallard on January 22, 2013 for judgment to be entered in favor of Plaintiffs and against Defendants Allegan Public School District, Kevin Harness, and Jim Mallard. (Doc. # 64). Plaintiffs request that the Five Hundred and 00/100 ($500) be distributed as follows: $2 to Plaintiffs State Representative David Agema, Elizabeth Griffin, and Willis Sage representing nominal damages to each Plaintiff for Claims 1 and 2, and $494 to Plaintiff Mark Gurley representing nominal damages for Claims 1 and 2, as well as $492 as contribution to Claim 3.

January 23 Notice of Acceptance of Offer of Judgment, R.67, Pg. ID# 730.

On January 24, 2013, the school district and Mallard filed a motion to withdraw their offer of judgment. They claimed that "[d]efendants were not fully apprised of the terms, conditions and consequences of the Offer of Judgment process by their legal counsel. The Offer of Judgment was made without the full understanding and consent of the parties themselves." Motion to Withdraw Offer of Judgment, R.70, Pg. ID#740. Vogelzang added in an affidavit that the offer "was filed without knowledge, consent, and full understanding of the client." Affidavit of William Vogelzang, R.70-1, Pg. ID# 742. At oral argument, counsel for the school district represented that Vogelzang "never talked to the school at all about making the offer." April 29 Oral Argument Audio Recording. Counsel also said that Vogelzang's January 23, 2013 email saying that his clients were having "second thoughts" was not "entirely truthful." *Id.* The clerk did not enter judgment. On January 25, 2013, the appellants filed a second acceptance without the original request to divvy the $500 up individually. On April 12, 2013, the district court granted the motion to withdraw offer of judgment. The district court concluded that the January 23 acceptance was really a counter-offer and hence a rejection. The district court did not address the school district's and Mallard's argument that they did not know about, or consent to Vogelzang's offer to stipulate to judgment. The appellants appealed the district court's grant of the motion to withdraw the offer of judgment to this Court. However, we dismissed the appeal for want of jurisdiction. *Agema v. City of Allegan*, 552 F. App'x 549, 554 (6th Cir. 2014).

c) Summary Judgment

The appellants and the school district and Mallard filed cross-motions for summary judgment on claims one and two. On March 9, 2015, the district court granted the school district and Mallard's motion. Since granting summary judgment removed the basis for its original jurisdiction, the district court further declined to exercise jurisdiction over claim three (breach of contract).

**II.**

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

**III.**

A.

We first consider the district court's decision to dismiss the appellants' complaint against the city of Allegan and Hoyer for failure to state plausible claims. Preliminarily, we note that the district court dismissed the suit against Hoyer because it found that the claims against him were redundant of claims against the city. The appellants did not challenge this decision in their briefs, so we deem the claims against Hoyer abandoned on appeal. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

This Court reviews a district court's decision to grant a motion to dismiss for failure to state a claim *de novo*. *Kottmeyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts cannot make it merely possible that the defendant is liable; they must make it plausible. *Id.* Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim. *Id.* To prevail in a 42 U.S.C. § 1983 suit against a municipality, a litigant must show a constitutional deprivation that was due to a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A litigant can show a policy or custom through reference to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Id.*

On appeal, the appellants argue that the city of Allegan is liable because (1) Hoyer's actions were final and unreviewable, (2) Hoyer had final policy-making authority for the Allegan police department pursuant to City of Allegan Code § 8; City of Allegan Code § 3.1, and (3) he had "unfettered discretion." Appellant Br. 40. The assertion that Hoyer oversaw all police

practices and policies and held policy-making authority draws on his deposition and legal provisions, City of Allegan Code § 8; City of Allegan Code § 3.1—facts and allegations never mentioned in the complaint. In seeking to provide additional factual support for their complaint, the appellants implicitly acknowledge that their complaint, standing alone, is insufficient to state plausible claims. Nevertheless, we cannot consider the first two arguments because the only facts alleged in their support come from the record developed during discovery. *See* Appellant Br. 40. In assessing whether the complaint states plausible claims, we confine our review to the complaint itself. *See Iqbal*, 556 U.S. at 678–79 (Requiring courts not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). It follows that we cannot decide that a complaint was worthy of proceeding to discovery against one party by considering evidence uncovered during discovery against another. *See id.*

To escape this conclusion, the appellants cite the Seventh Circuit's decision in *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 914-15 (7th Cir. 1985) for the proposition that a court can look to evidence developed during discovery to assess the pleadings' sufficiency. In *Orthmann*, the court considered evidence from discovery in an identical suit in Minnesota in deciding that the district court erroneously held that the plaintiffs failed to state a claim. *Id.* at 914. However, since *Orthmann* confronted a pleading regime far different from what this Court confronts today, we decline to rely on it as persuasive authority. For example, *Orthmann* observed that the plaintiff "filed a brief complaint which merely fails to plead the facts showing his theory of liability; and this is no ground for dismissal." *Id.* at 915. This is plainly at odds with *Iqbal*, which requires a plaintiff to allege enough facts to make her claim plausible. *Iqbal*, 556 U.S. 662 at 678. Moreover, reversing the district court and allowing the appellants' conclusory complaint to proceed to discovery runs counter to the Supreme Court's objective of sparing defendants the burden of a time-consuming and expensive discovery process when the complaint is defective. *See Iqbal*, 556 U.S. 662 at 685; *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 558 (2007). Without the supplemental evidence the appellants cite, their arguments that (1) Hoyer's actions were final and unreviewable, and (2) Hoyer had final policy-making authority for the Allegan police department are conclusory statements insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 680.

That leaves the appellants' argument that municipal liability attaches because the city gave Hoyer "unfettered discretion." Appellant Br. 40. At no point in their briefs do the appellants demonstrate that their complaint alleges sufficient accompanying facts to show that the city plausibly had a policy or custom of giving such expansive discretion to officials. To be sure, they assert "the amended complaint sets forth sufficient facts to give Defendants fair notice of what the claims are and the grounds upon which they rest." Appellant Br. 28. However, merely asserting that they alleged sufficient facts without telling us what those facts are amounts to mentioning an argument "in the most skeletal way…leaving the court to put flesh on its bones." *Kelsey*, 125 F.3d at 996 (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)). This, we will not do. Without supporting facts, the argument that Hoyer's "actions as the Chief of Police…had been delegated to him with unfettered decisions [sic]," Appellant Br. 40, becomes a conclusory statement insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 680. Because the appellants have not mentioned any supporting facts for us to consider on appeal, we affirm the district court's dismissal of their complaint.

Since the complaint did not allege sufficient facts to find an applicable municipal policy or custom, we need not address the parties' arguments about whether the complaint plausibly alleged a deprivation of constitutional rights.

B.

We next consider the appellants' argument that the district court erroneously allowed the school district and Mallard ("defendants") to withdraw their Fed. R. Civ. P. 68 offer to stipulate to judgment. We conclude that the acceptance on January 23, 2013 was effective, but remand to the district court the question of whether the defendants' attorney Vogelzang had authority to offer to stipulate to judgment.

We review the district court's interpretation of the January 23, 2013 acceptance as a counter-offer *de novo*. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837 (6th Cir. 2005). We review any factual findings for clear error. *Id.* During proceedings on April 12, 2013, the district court granted the defendants' motion to withdraw. The court relied on *Safeco*

*Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540 (6th Cir. 1994).  *Safeco* applied Tennessee law to the contractual dispute.  Under Tennessee law, an acceptance must mirror the offer's terms, and cannot add or omit any terms.  *Id.* at 546.  Here, the district court found that since the offer was for a "straight" $500, the request to disburse the money to individual plaintiffs in different amounts added terms, and so constituted a counter-offer.  Motion Proceedings, R. 101, Pg. ID# 1038.

On appeal, we apply general contract principles to this dispute.  *Mallory v. Eyrich*, 922 F.2d 1273, 1279–80 (6th Cir. 1991).  A counter-offer generally constitutes a rejection of the original offer.  Williston on Contracts, § 5:3; Restatement (second) of Contracts § 39.  Moreover, a conditional acceptance is a counteroffer.  *Id.*  But, when there is an unequivocal acceptance that makes additional requests, the acceptance is still valid.  *Id.*; *Brangier v. Rosenthal*, 337 F.2d 952, 954 (9th Cir. 1964); *Valashinas v. Koniuto*, 283 A.D. 13, 17 (N.Y. Ct. App. 1953); *Duprey v. Donahoe*, 52 Wash.2d 129, 134 (Wash. 1958).  At dispute is the appellants' communication on January 23, 2013.

We find that the district court erred in treating this as a counter-offer. The appellants made clear that they accepted the offer in full. The request to disburse the money individually was specifically worded as a "request" and not a condition of acceptance.  When parties indicate that they accept an offer, and merely add proposals for carrying out the offer, courts have not invalidated the acceptance.  *Brangier*, 337 F.2d at 954 ("Appellee's letter responding to appellant's offer indicated clearly enough an unconditional acceptance of the alternate procedure. Appellee's assent being clear and unqualified, the requests, inquiries, and mild grumblings which accompanied it did not convert it into a counteroffer."); *Valashinas* , 283 A.D. at 17 ("But if the acceptance of an offer is initially unconditional, the fact that it is accompanied with a direction or a request looking to the carrying out of its provisions, but which does not limit or restrict the contract, does not render it ineffectual or give it the character of a counteroffer."); *Duprey*, 52 Wash.2d at 134 ("If the optionee attaches conditions not warranted by the terms of the option to his acceptance or notice of his election to buy, this itself amounts to a rejection; but it is otherwise where the acceptance is in the first instance unconditional, and a mere request is added for a departure from the terms of the option as to the time and place of completing the

transaction."). The January 23, 2013 acceptance was therefore valid. Given that, we need not reach the parties' arguments about whether Fed. R. Civ. P. 68 offers are irrevocable.

In the district court and on appeal, the defendants maintain that they did not know about, or consent to the Fed R. Civ. P. 68 offer. Because the district court granted the motion to withdraw on the grounds that the appellants' January 23, 2013 communication was a counter-offer, it never considered whether the defendants consented to the offer. Since we have concluded that the January 23, 2013 acceptance was valid however, we must now consider whether Vogelzang had the defendants' consent to make the offer. There are varying accounts of whether the defendants knew about and consented to the offer. On one hand, Vogelzang wrote in an email that "my client may be having second thoughts about this." R. 71-2, Pg. ID# 754. This suggests that the defendants knew about the offer and later changed their minds. On the other hand, Vogezlang wrote in his affidavit accompanying the motion to withdraw, that the offer "was filed without knowledge, consent, and full understanding of the client." Affidavit of William Vogelzang, R.70-1, Pg. ID# 742. At oral argument, defense counsel claimed that Vogelzang "never talked to the school at all about making the offer." April 29 Oral Argument Audio Recording. Counsel further described Vogelzang's January 23, 2013 email saying that his clients were having "second thoughts" as not "entirely truthful." *Id.* Given the contradictory claims, we cannot say definitively whether the defendants knew about or consented to the offer. We therefore remand this issue to the district court for further proceedings.

## C.

The district court also granted summary judgment to the defendants. However, we need not consider the parties' arguments about whether summary judgment was appropriate because we are remanding for the district court to consider whether Vogelzang had his clients' knowledge and consent to make a Fed. R. Civ. P. 68 offer. If he did, the appellants' acceptance is binding and the summary judgment issue would become moot.

## IV.

In conclusion, we **AFFIRM** the district court's dismissal of the appellants' complaint against the city of Allegan, but **REVERSE** the district court's conclusion that the appellants'

January 23, 2013 communication was an invalid acceptance. We **REMAND** for proceedings consistent with this opinion.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

MERRITT, Circuit Judge, concurring in part and dissenting in part. I agree with and therefore join the majority in affirming the district court's dismissal of the plaintiffs' § 1983 municipal liability claims against the city and its police chief. I also agree that the plaintiffs accepted the Rule 68 settlement offer made on behalf of the school and its principal, but see no need to remand for further proceedings. The bottom line for me in this case is that there was a sufficient threat to public safety to justify terminating the meeting in this day and time when guns are too easily accessible for almost everyone and mass killings in public places are a frequent occurrence. In addition, defense counsel as an agent of defendant had apparent authority to make the Rule 68 offer and so the settlement of the lawsuit should be enforced.

## I.

I write separately on the constitutional liability point to emphasize that, in my view, the plaintiffs' claims against the City of Allegan and Police Chief Rick Hoyer must be dismissed because the plaintiffs failed to adequately plead a violation of their First Amendment free speech rights in their complaint. *See Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)) ("There can be no . . . municipal liability under § 1983 unless there is an underlying unconstitutional act.").

First Amendment jurisprudence requires "forum analysis to determine when a governmental entity, in regulating property in its charge, may place limitations on speech." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 (2010). Forum analysis "requires a court first to categorize a location (or forum) to which a speaker seeks access for the purpose of expressive activity, and then to analyze the government's restriction on speech against the constitutional standard that governs in that forum." Note, *Strict Scrutiny in the Middle Forum*, 122 Harv. L. Rev. 2140 (2009). For the purposes of forum analysis, four forum classifications have been recognized: public forums, designated public forums, limited public forums, and non-public forums. *See Miller v. City of*

*Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). "The type of forum determines the applicable constitutional standard for restrictions on expressive activities." *Id.*

"Traditional public fora include sidewalks, parks, and other areas that by tradition or by government fiat are open to public assembly and debate." *Id.* (citations and internal quotation marks omitted). "The government creates a designated public forum when it opens a piece of public property to the public at large, treating [it] as if it were a traditional public forum." *Id.* "The defining characteristic of a designated public forum is that it's open to the same 'indiscriminate use,' . . . and 'almost unfettered access,' . . . that exist in a traditional public forum." *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 496 (9th Cir. 2015) (first quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983); and then quoting *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998)). Meanwhile, the government creates a limited public forum when it creates "'a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Miller*, 622 F.3d at 534-35 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)). Finally, "a nonpublic forum is a publicly-owned property that is not by tradition or governmental designation 'a forum for public communication.'" *Id.* at 535 (quoting *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007)).

The plaintiffs argue that the school space at issue here is a designated public forum, but their complaint altogether fails to allege any facts indicating that the school space they rented was open to "indiscriminate use" or "unfettered access." Instead, they describe having to meet with Allegan High School Principal Jim Mallard to discuss their event, find an appropriate space for it, and pay a $90 fee in order to reserve it for a specified time. At most, the facts alleged in the plaintiffs' complaint describe a *limited* public forum — which, for the purposes of my analysis, I will assume it was.

Restrictions on speech in a limited public forum "must not discriminate . . . on the basis of viewpoint, and . . . must be reasonable in light of the purpose served by the forum," *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) (citations and internal quotation marks omitted), but such restrictions may exclude a speaker on the basis of identity, *Martinez*, 561 U.S. at 681 (citing *Perry*, 460 U.S. at 49). This is the same standard that governs restriction

of speech in a nonpublic forum. *See Miller*, 622 F.3d at 535-36 ("limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny").

As the district court correctly held, the plaintiffs' complaint offers only "mere conclusory statements that the decision to close the event was an effort to suppress expression because public officials opposed" the viewpoint espoused. *Agema v. City of Allegan*, No. 1:12-CV-417, 2014 WL 249374, at *8 (W.D. Mich. Jan. 22, 2014). Although the plaintiffs allege that opponents of the event had complained in advance about the viewpoint it would represent, the plaintiffs fail to allege any facts indicating that police terminated the event because of the viewpoint being expressed. Thus, the plaintiffs are not entitled to relief because "the well-pleaded facts do not permit the court to infer more than the mere possibility" of viewpoint discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). If anything, the facts alleged by the plaintiffs support only the inference that the event was stopped due to public safety concerns. This is because: officials allowed the event to begin even though they knew in advance what the event would entail; they had already heard viewpoint-based opposition to the event before it started; and they stopped the event only after becoming aware that Kamal Saleem was subject to a bounty. Moreover, the plaintiffs admit that the event attracted no viewpoint-based opposition while it was occurring, further negating the inference that viewpoint discrimination was the basis for the event's cancellation.

The plaintiffs' complaint likewise fails to adequately allege that officials acted unreasonably in terminating the event. The plaintiffs allege that there was no "real danger" because there were no credible death threats against Saleem, and that the defendants inadequately secured the event area after terminating the event. Taking these allegations as true, the plaintiffs nonetheless fail to adequately allege that officials acted unreasonably because the plaintiffs admit that Saleem's associates *confirmed* to police during the event that Saleem was subject to death threats, and "the government does not need to wait 'until havoc is wreaked to restrict access'" to a limited public forum on the basis of public safety concerns. *United Food & Com. Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 751 (6th Cir. 2004) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 805 (1985)). This is especially true where, as here, the limited public forum is part of a school, because the

reasonableness of restricting speech in a limited public forum is judged "in light of the purpose served by the forum," *Good News Club*, 533 U.S. at 107, and the preservation of public safety on the grounds of a school is an unquestionably high priority for public officials.

Thus I would affirm the district court's dismissal of the plaintiffs' municipal liability claims because their complaint fails to state a constitutional deprivation.

**II.**

I agree with the majority that the plaintiffs' communication on January 23, 2013, was an acceptance of the offer to stipulate to judgment pursuant to Rule 68 made on behalf of defendants Allegan Public School District and Principal Jim Mallard. *See Brangier v. Rosenthal*, 337 F.2d 952, 954 (9th Cir. 1964) (citation omitted) ("Appellee's assent being clear and unqualified, the requests, inquiries, and mild grumblings which accompanied it did not convert it into a counteroffer."). However, I reach this conclusion after reviewing the district court's interpretation of the plaintiffs' January 23 communication for clear error, as opposed to *de novo*. *See id.* (reviewing for clear error the "factual premise" that the appellee's assent to an offer was indeed an acceptance, and not a counteroffer); *see also Ralph Shrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210, 1215 (6th Cir. 1987) (holding that, under Michigan law, whether a party assented to an offer is a question of fact).

Moreover, I disagree with the majority that this case should be remanded to the district court for further proceedings to determine if Vogelzang possessed the authority to make a Rule 68 offer on behalf of the defendants. For one thing, it is clear from the record that, as their lawyer, Vogelzang had apparent authority to make a Rule 68 offer on behalf of his clients. *See Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986) (citations omitted) ("Generally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter.").

Furthermore, neither the majority nor the defendants point to any legal authority supporting the proposition that a party can withdraw an already-accepted Rule 68 offer solely because the offeror's counsel lacked the authority to make the offer.

Indeed, the defendants do not even muster such an argument. Instead, they seem to argue that Vogelzang attempted to revoke his Rule 68 offer on January 23, prior to the plaintiffs' acceptance, and that Vogelzang's lack of actual authority to make the offer should have allowed for its revocation. As the defendants correctly point out, authorities are split on the question of whether Rule 68 offers are revocable, and our Court has yet to address the question. There are, however, three possible approaches: treating such offers as irrevocable during the 14-day period during which the offeree can accept the offer, *see, e.g., Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995); allowing such offers to be revoked for good cause, *see, e.g., Fisher v. Stolaruk Corp.*, 110 F.R.D. 74, 76 (E.D. Mich. 1986); or allowing such offers to be freely revoked. Although the free revocation approach may be the most immediately intuitive because the text of Rule 68 places no limits on revocation, defendants identify no authorities supporting this approach. Thus, the question boils down to whether Rule 68 offers can be revoked for some form of good cause.

But we need not answer this question, because even if Rule 68 offers are revocable for good cause, I do not believe that Vogelzang's lack of actual authority would be sufficient cause. This is true whether we were to adopt a lenient standard for good cause, *see, e.g., Cain v. City of St. Johns*, No. CIV 05-1659 PCTSMM, 2007 WL 1020350, at *2 (D. Ariz. Apr. 2, 2007) (allowing an unaccepted Rule 68 offer to be revoked for unilateral mistake by the offeror), or a demanding standard, *see, e.g., Fisher*, 110 F.R.D. at 76 (allowing an unaccepted offer to be revoked only after, among other things, a showing that it was based on a "mistake . . . of such consequence that enforcement would be unconscionable"). Defendants have alleged neither a mistake nor any unconscionability that would result from an entry of judgment pursuant to their original Rule 68 offer. Instead, they complain of their attorney's unapproved hastiness. But this does not entitle them to relief at the expense of the plaintiffs by allowing the original Rule 68 offer to be revoked. *Cf. Capital Dredge*, 800 F.2d at 530 ("Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions. In such a situation, the client's remedy is to sue his attorney for professional malpractice.").

I would therefore reverse the district court in the plaintiffs' case against Allegan High School and Principal Jim Mallard, and remand to the district court with instructions that it enter judgment in favor of the plaintiffs consistent with the original Rule 68 offer.