MERRITT, Circuit Judge,
concurring in part and dissenting in part.
I agree with and therefore join the majority in affirming the district court’s dismissal of the plaintiffs’ § 1983 municipal *335 liability claims against the city and its police chief. I also agree that the plaintiffs accepted the Rule 68 settlement offer made on behalf of the school and its principal, but see no need to remand for further proceedings. The bottom line for me in this case is that there was a sufficient threat to public safety to justify terminating the meeting in this day and time when guns are too easily accessible for almost everyone and mass killings in public places are a frequent occurrence. In addition, defense counsel as an agent of defendant had apparent authority to make the Rule 68 offer and so the settlement of the lawsuit should be enforced.
I.
I write separately on the constitutional liability point to emphasize that, in my view, the plaintiffs’ claims against the City of Allegan and Police Chief Rick Hoyer must be dismissed because the plaintiffs failed to adequately plead a violation of their First Amendment free speech rights in their complaint. See Wilson v. Morgan, 477 F.3d 326, 340 (6th Cir. 2007) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam)) (“There can be no ... municipal liability under § 1983 unless there is an underlying unconstitutional act.”).
First Amendment jurisprudence requires “forum analysis to determine when a governmental entity, in regulating property in its charge, may place limitations on speech.” Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 679, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010). Forum analysis “requires a court first to categorize a location (or forum) to which a speaker seeks access for the purpose of expressive activity, and then to analyze the government’s restriction on speech against the constitutional standard that governs in that forum.” Note, Strict Scrutiny in the Middle Forum, 122 Harv. L. Rev. 2140 (2009). For the purposes of forum analysis, four forum classifications have been recognized: public forums, designated public forums, limited public forums, and non-public forums. See Miller v. City of Cincinnati, 622 F.3d 524, 534 (6th Cir. 2010). “The type of forum determines the applicable constitutional standard for restrictions on expressive activities.” Id.
“Traditional public fora include sidewalks, parks, and other areas that by tradition or by government fiat are open to public assembly and debate.” Id. (citations and internal quotation marks omitted). “The government creates a designated public forum when it opens a piece of public property to the public at large, treating [it] as if it were a traditional public forum.” Id. “The defining characteristic of a designated public forum is that it’s open to the same ‘indiscriminate use,’ ... and ‘almost unfettered access,’ ... that exist in a traditional public forum.” Seattle Mideast Awareness Campaign v. King Cty., 781 F.3d 489, 496 (9th Cir. 2015) (first quoting Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 47, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); and then quoting Arkansas Educ. Television Comm’n v. Forbes, 523 U.S. 666, 678, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998)). Meanwhile, the government creates a limited public forum when it creates “ ‘a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.’ ” Miller, 622 F.3d at 534-35 (quoting Pleasant Grove City v. Summum, 555 U.S. 460, 469, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009)). Finally, “a nonpublic forum is a publicly-owned property that is not by tradition or governmental designation ‘a forum for public communication.’” Id. at 535 (quoting Helms v. Zubaty, 495 F.3d 252, 256 (6th Cir. 2007)).
*336 The plaintiffs argue that the school space at issue here is a designated public forum, but their complaint altogether fails to allege any facts indicating that the school space they rented was open to “indiscriminate use” or “unfettered access.” Instead, they describe having to meet with Allegan High School Principal Jim Mallard to discuss their event, find an appropriate space for it, and pay a $90 fee in order to reserve it for a specified time. At most, the facts alleged in the plaintiffs’ complaint describe a limited, public forum — which, for the purposes of my analysis, I will assume it was.
Restrictions on speech in a limited public forum “must not discriminate ... on the basis of viewpoint, and ... must be reasonable in light of the purpose served by the forum,” Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-07, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (citations and internal quotation marks omitted), but such restrictions may exclude a speaker on the basis of identity, Martinez, 561 U.S. at 681, 130 S.Ct. 2971 (citing Perry, 460 U.S. at 49, 103 S.Ct. 948). This is the same standard that governs restriction of speech in a nonpublic forum. See Miller, 622 F.3d at 535-36 (“limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny”).
As the district court correctly held, the plaintiffs’ complaint offers only “mere con-clusory statements that the decision to close the event was an effort to suppress expression because public officials opposed” the viewpoint espoused. Agema v. City of Allegan, No. 1:12-CV-417, 2014 WL 249374, at *8 (W.D. Mich. Jan. 22, 2014). Although the plaintiffs allege that opponents of the event had complained in advance about the viewpoint it would represent, the plaintiffs fail to allege any facts indicating that police terminated the event because of the viewpoint being expressed. Thus, the plaintiffs are not entitled to relief because “the well-pleaded facts do not permit the court to infer more than the mere possibility” of viewpoint discrimination. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Fed. R. Civ. P. 8(a)(2)). If anything, the facts alleged by the plaintiffs support only the inference that the event was stopped due to public safety concerns. This is because: officials allowed the event to begin even though they knew in advance what the event would entail; they had already heard viewpoint-based opposition to the event before it started; and they stopped the event only after becoming aware that Kamal Saleem was subject to a bounty. Moreover, the plaintiffs admit that the event attracted no viewpoint-based opposition while it was occurring, further negating the inference that viewpoint discrimination was the basis for the event’s cancellation.
The plaintiffs’ complaint likewise fails to adequately allege that officials acted unreasonably in terminating the event. The plaintiffs allege that the^e was no “real danger” because there were no credible death threats against Saleem, and that the defendants inadequately secured the event area after terminating the event. Taking these allegations as true, the plaintiffs nonetheless fail to adequately allege that officials acted unreasonably because the plaintiffs admit that Saleem’s associates confirmed to police during the event that Saleem was subject to death threats, and “the government does not need to wait ‘until havoc is wreaked to restrict access’ ” to a limited public forum on the basis of public safety concerns. United Food & Com. Workers Local 1099 v. City of Sidney, 364 F.3d 738, 751 (6th Cir. 2004) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 805, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). This is especially true where, as here, the limited *337 public forum is part of a school, because the reasonableness of restricting speech in a limited public forum is judged “in light of the purpose served by the forum,” Good News Club, 533 U.S. at 107, 121 S.Ct. 2093, and the preservation of public safety on the grounds of a school is an unquestionably high priority for public officials.
Thus I would affirm the district court’s dismissal of the plaintiffs’ municipal liability claims because their complaint fails to state a constitutional deprivation.
II.
I agree with the majority that the plaintiffs’ communication on January 23, 2013, was an acceptance of the offer to stipulate to judgment pursuant to Rule 68 made on behalf of defendants Allegan Public School District and Principal Jim Mallard. See Brangier v. Rosenthal, 337 F.2d 952, 954 (9th Cir. 1964) (citation omitted) (“Appel-lee’s assent being clear and unqualified, the requests, inquiries, and mild grumblings which accompanied it did not convert it into a counteroffer.”). However, I reach this conclusion after reviewing the district court’s interpretation of the plaintiffs’ January 23 communication for clear error, as opposed to de novo. See id. (reviewing for clear error the “factual premise” that the appellee’s assent to an offer was indeed an acceptance, and not a counteroffer); see also Ralph Shrader, Inc. v. Diamond Int’l Corp., 833 F.2d 1210, 1215 (6th Cir. 1987) (holding that, under Michigan law, whether a party assented to an offer is a question of fact).
Moreover, I disagree with the majority that this case should be remanded to the district court for further proceedings to determine if Vogelzang possessed the authority to make a Rule 68 offer on behalf of the defendants. For one thing, it is clear from the record that, as their lawyer, Vo-gelzang had apparent authority to make a Rule 68 offer on behalf of his clients. See Capital Dredge & Dock Corp. v. City of Detroit, 800 F.2d 525, 530 (6th Cir. 1986) (citations omitted) (“Generally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter.”).
Furthermore, neither the majority nor the defendants point to any legal authority supporting the proposition that a party can withdraw an already-accepted Rule 68 offer solely because the offeror’s counsel lacked the authority to make the offer.
Indeed, the defendants do not even muster such an argument. Instead, they seem to argue that Vogelzang attempted to revoke his Rule 68 offer on January 23, prior to the plaintiffs’ acceptance, and that Vo-gelzang’s lack of actual authority to make the offer should have allowed for its revocation. As the defendants correctly point out, authorities are split on the question of whether Rule 68 offers are revocable, and our Court has yet to address the question. There are, however, three possible approaches: treating such offers as irrevocable during the 14-day period during which the offeree can accept the offer, see, e.g., Richardson v. Nat’l R.R. Passenger Corp., 49 F.3d 760, 765 (D.C. Cir. 1995); allowing such offers to be revoked for good cause, see, e.g., Fisher v. Stolaruk Corp., 110 F.R.D. 74, 76 (E.D. Mich. 1986); or allowing such offers to be freely revoked. Although the free revocation approach may be the most immediately intuitive because the text of Rule 68 places no limits on revocation, defendants identify no authorities supporting this approach. Thus, the question boils down to whether Rule 68 offers can be revoked for some form of good cause.
*338 But we need not answer this question, because even if Rule 68 offers are revocable for good cause, I do not believe that Vogelzang’s lack of actual authority would be sufficient cause. This is true whether we were to adopt a lenient standard for good cause, see, e.g., Cain v. City of St. Johns, No. CIV 05-1659 PCTSMM, 2007 WL 1020350, at *2 (D. Ariz. Apr. 2, 2007) (allowing an unaccepted Rule 68 offer to be revoked for unilateral mistake by the offeror), or a demanding standard, see, e.g., Fisher, 110 F.R.D. at 76 (allowing an unaccepted offer to be revoked only after, among other things, a showing that it was based on a “mistake ... of such consequence that enforcement would be unconscionable”). Defendants have alleged neither a mistake nor any unconscionability that would result from an entry of judgment pursuant to their original Rule 68 offer. Instead, they complain of their attorney’s unapproved hastiness. But this does not entitle them to relief at the expense of the plaintiffs by allowing the original Rule 68 offer to be revoked. Cf. Capital Dredge, 800 F.2d at 530 (“Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client’s express instructions. In such a situation, the client’s remedy is to sue his attorney for professional malpractice.”).
I would therefore reverse the district court in the plaintiffs’ case against Allegan High School and Principal Jim Mallard, and remand to the district court with instructions that it enter judgment in favor of the plaintiffs consistent with the original Rule 68 offer.